Mr. Cantor, right? Yes, Your Honor. Please proceed. May it please the Court, my name is Glenn Cantor. I do represent the Appellates, and I'd like to reserve three minutes for rebuttal. As the Court is aware, this matter centers on the issue of waiver. We know that waiver is a factually driven argument, and it's not fair to have a motion dismissed if properly alleged. While there are exceptions, we don't think this case met those exceptions. Counsel, let's assume arguendo that waiver has been established. Don't you still have to show that damages were sustained in order to be successful? And in what way did that occur here? Okay. This policy was purchased in 2002. It's purchased, as alleged in the complaint, for the express purpose that these people were in their 60s when they bought this policy. They want to have care provided. And they didn't want the other spouse, who's going to be in an advanced age, to have to perform that care. They're paying premiums for 20 years so that somebody else will perform that care. And I — believe me, on a personal level, I feel great empathy for your clients. The issue here, though, is we're dealing with an insurance policy that excludes the ability of Mr. Petofsky to provide the services involved. It's just express. There's no question about it. And your clients have not shown that they incurred any expenses at all. And therefore, under the policy, there are no damages, right? No, that's not right, Your Honor. Tell us why that's not right. I would very respectfully disagree.  Okay. This is a two-track application. One is to get medical approval. The second is to get approval for the caregivers. Lincoln advised my clients early on they needed approval for the caregivers. Lincoln knew from the start they hadn't incurred expenses. Mr. Petofsky writes to them and says, in essence, to shortcut it, we believe it makes sense to wait for approval from Lincoln before using our policy, approval for the caregivers. It never happens. Mr. Petofsky says, I don't want to incur my very limited resources. In spending money on caregivers, you're never going to approve. Does the policy say you need to get advance approval of the caregiver, or does the policy say you hire a caregiver, and then when you incur expenses, submit a claim? The policy is ambiguous. I thought it was the latter, but correct me if I'm wrong. The policy is very ambiguous on the insurance company's need or ability to approve caregivers. But Lincoln wrote to them and said, we need to approve them in advance. So the Petofskys say, okay, we don't want to incur these expenses if you're not going to approve the caregivers. We're going to wait for you to do it. Now, moving down the line, Lincoln writes back and says, well, still waiting for information about your caregivers. Then what happens is Lincoln tells the Petofskys in writing, we have everything we need to decide your claim. It doesn't say except we need evidence that you've incurred the expenses. It says we have everything we need. And Mr. Petofsky then writes back and says, I'm confirming you have everything you need. Excuse me. Perhaps I'm recalling this incorrectly, but I thought they said they had all of the information they needed to make a decision. They didn't say they hadn't made a decision. Oh, I'm sorry. We have everything we need to consider your claim. Right, exactly. I didn't misspoke. Basically, got all the paperwork we need. It didn't say they decided. It didn't say what they decided. They just said they had what they needed to decide. Correct. I'm sorry if I misspoke. I thought you said they decided.  And they did decide. They decided on medical grounds that she didn't meet the criteria. They've never said to the Petofskys, and by the way, also your caregivers are not approved, or that they were approved. They've never answered that. So my point to the Court as far as damages is by failing to tell the Petofskys that their caregivers were approved, as Lincoln said, we need to approve them, they, in essence, force Mr. Petofsky to continue to be the caregiver for his wife. Now, we can see the policy says he as the husband is not an eligible caregiver. Our point is that by having breached that contract, by not telling them that the caregivers were approved or were not approved, they have put him in the position of having to provide that care. And having breached it, we don't think they're permitted to then fall back on the defense of, well, he was the spouse, so he can't be eligible. We can see he was not eligible under the terms of the policy, but we think they've waived that argument as well. I'd like to point out, Lincoln could have— So your argument is that they waived damages? Not that they waived damages. That they waived the provision that Mr. Petofsky as a spouse couldn't provide the care. If they had said to him, yes, these caregivers are approved, as you've requested, he could have gone out and hired them. But they never did that. I'd like to point out that— So Mr. Petofsky could have submitted basically a monetary claim based on his role as the in-home caregiver? I think if they had approved the claim, given the circumstances, yes. You're claiming, I think for the first time that I've seen in the record, that the insurance company waived the limitation of Mr. Petofsky to be the caregiver. Did you make that argument before the district court? Yes, Your Honor, we did. I'd also point out— That they expressly waived that provision of the policy? I don't know if it was argued that clearly, but we made it as part of our damage argument. I can specifically recall making that argument to Judge O'Rourke, who said to me, you're making an argument that belongs in front of a jury. Well, I don't think that's accurate, and I'd also say that this is a motion to dismiss. We should have the right to discovery. But, you know, Lincoln could have fixed this by saying to these people, we're not going to approve your caregivers, we're not going to decide the claim until you've expended the money. You need to know that. Let's not forget what kind of insurance this is. This is long-term care. This is not your regular run-of-the-mill insurance. People buy this when they're in their 60s. They're in their 50s. They're healthy. And the carriers know that when these claims are coming in, these people are going to be infirmed. They're going to be at a very advanced age. They have a duty to help these people. In this case, Lincoln didn't even— What do you mean by that? I think there is a higher duty for a long-term care carrier— Is this like a religious duty or what? No, no, no, no. What are you saying? No. Any insurance company is a quasi-fiduciary and has claims handling and investigative duties. I would just argue that in this particular area of insurance, there should be just a higher duty as an insurer, as a quasi-fiduciary, to be assisting these people. Do you have any California case law that would substantiate that position? No. I think it's an issue of First Impression. That's unique. It's an interesting argument, but I don't know of any case law that backs you up. And I don't either. I think this Court, I know, is not supposed to make California law, but it certainly has the right, if it chooses, to send that issue, if it thinks it needs to, to the California Supreme Court. I think the California Supreme Court would absolutely agree that there's a higher duty in handling a long-term care case. Under California law, the waiver is an intentional relinquishment of a known right, correct? And— Excuse me, Your Honor. No, it's not.  The California Supreme Court in Waller specifically said intent is not required if the conduct of the insurance company would lead a reasonable insured to believe that there's been waiver. And here, if we look at that, Lincoln says we need to approve your caregivers. They never approve them. They don't disapprove them either. When the denial letter finally comes in, it discusses one thing. But who is the caregiver that was offered? There were several. One was a grandchild who is eligible. Another was a woman who was going to provide care. And they gave them the information. And they said, these are our proposed caregivers. We can't get a schedule until you've approved them. So Lincoln knew they were not approved. But, Judge Timovitz, you asked about intent versus the conduct which leads a reasonable insured. Once again, here, everything Lincoln did led the insureds down a garden path. They never said to them, we—you know, they could have said, we're not deciding your claim or the medical aspects of your claim. They could have said, and we're not going to approve any caregivers. You need to go out and spend the money, and then we'll approve it. If they had done that, fine. They would have done exactly that. But they didn't know they needed to. I'm looking at that letter that you're saying is waiver. It says it just, I have everything needed to send the claim to my supervisor for approval review. That's the same—that's the claim that you think waives everything? The statement? That statement and the fact— But, I mean, it says approval review. It doesn't—it just means that they could start looking at it. It doesn't mean that all the elements are meant. Well, fine, Your Honor. Then what happens is they deny it, and they use one reason. They don't say, you didn't incur expenses. They don't say, we're not approving your caregivers. They say, you don't meet the medical criteria to be approved. So at this point, what are the Patofskys supposed to do? They've been told, even if you make a claim, we've already effectively denied it, and we're not even telling you about the approval of your caregivers. They've left them between a rock and a hard place.  Their only reasonable avenue at that point is to file a litigation. And the first time this is ever brought up about needing to incur expenses is in a motion to dismiss filed after the lawsuit. So— Can I ask—I mean, obviously, Alzheimer's is a progressive disease. What has happened now? Has she received care now? She is receiving care and receiving benefits. So she now meets the criteria under Lincoln? She always met the criteria. Okay, fair. But after the court granted the motion to dismiss, I told these people, you go get care. I'm going to guarantee you, to the best of my ability, I will get these claims paid. So as soon as we had them submit the—to expend the money, the claim was approved, with no real new evidence. Got it. So— So the damages would only just be a few months of care, essentially. It's more than a few months. It's probably over a year, but yes. And to be clear, we would not seek that Mr. Patofsky be compensated of the daily amount for the elimination period. Somebody has to incur that, and he did that work for free. But after that, he was doing this when he shouldn't have had to. Lincoln should have made it clear to him, you've got to do it, or at least— well, they shouldn't have denied the way they did without letting him know what was going on. So it sounds like what you're saying is because of the elderly status of your clients, that the insurance company had a quasi-fiduciary duty, I think you said, or a religious duty to take care of them, get out there and be sure they filed everything properly. No, Your Honor. I'm saying that in this case, there might be a little bit of a higher quasi-fiduciary— And what is that? —than any insurance. What is that? What are they supposed to do? Are they supposed to send somebody out with a collar and say—  —that we're here to help? No, Your Honor. When Lincoln says to them, we need to approve your caregivers, they tell them that. They submit names. Lincoln never approves them or disapproves them. You want to save any time? Yes, thank you, Your Honor. Very well. All right, let's hear from counsel for the insurance company. Kojima, is that the correct pronunciation? Yes, Your Honor. Please proceed. May it please the Court, my name is Keiko Kojima, representing Lincoln Benefit Life Company, the appellee in this matter. This is an appeal about performance and damages under a reimbursement policy. Bringing the case back to fundamentals, we look to the tenets, the basic tenets of contract law. In order for there to be a breach of contract, you need performance and you need damages. Those two are very separate ideas, performance and damages. And here, the Petoskeys alleged neither. They failed to allege performance because they didn't receive the care, or they allege they didn't receive the care by an eligible caregiver. The spouse cannot be a caregiver. They also failed to allege that they paid for care. Again, they failed to allege that they paid for care. Does the policy require advance notice by Lincoln of a proposed caregiver? It requires proof. It requires notice and proof of loss. So in that sense, when the appellants now say that somehow Lincoln breached the contract, breached the contract by not letting them know that Mr. Petoskey, who was authorized as a caregiver, that's not only a new argument, but that's not a breach of contract under the policy. So the answer is no. No, no. They do not need advance approval to hire a caregiver. It's part of the claim process. But if we're looking for a specific item in the policy as to specifying the very minute steps along the way for a claim to be approved. What if they hire somebody and then the company comes along and says, well, that's, you know, it's a teenager. You know, he's unqualified to be a professional caregiver and denies the claim. It seems like a prudent senior citizen might want to confirm before they incur expenses that they're not going to have a denial problem. And isn't that what was going on here? And the company seemed to, you know, hide the ball from the Petoskeys, and they were stuck in the middle, and they didn't know what to do. That's a good question, Your Honor. But that's really not the situation here. This is not an estoppel case. This is purely on waiver. Appellants here now make the argument and try to hinge it on you failed to approve caregiver argument. But that's really not what's at issue. The policy is a reimbursement policy. It requires eligible care, number one. Two, that the insured receive care from an eligible caregiver. And three, that payment is made for services. And in this lawsuit, the Petoskeys are trying to eradicate those last two requirements, completely eradicate them under an untenable waiver theory. Who asked for the preapproval? Did they do, or did Blinken say you should have preapproval? Correct. It's part of the claim process. But, again, I think it's misdirection in terms of the approval. This is not an estoppel case. Yeah. You're saying it requires reimbursement. But if you require preapproval, then how can you require reimbursement? No. For example, the Petoskeys asked the company for a medical decision, for an eligibility decision, first and foremost. And so the company reasonably and understandably performed that claim review for eligibility. So the second part. So I guess my question is if they've hired a caregiver right away, could they then submit it after the fact and say we're entitled reimbursement then?  They don't need preapproval, is my point. No, no. Okay. No, it's more of getting to the point quickly. Bracing any doubt. Right, right. I have all the information. Yes, your granddaughter is approved. Go ahead and start the care. And if she had already performed the care, that's something the company wanted to know as well. So from your perspective, the insurance company's perspective, this appeal is entirely about waiver. Is that correct? No, your Honor. It's about damages as well. The two concepts are different. And this is something that we've advocated for in the briefing below. And Judge Orrick understood that. There's a difference between performance for a contract and damages. Waiver only goes to performance. It does not go to damages. And here the damages are speculative. And I would also want to also emphasize that this appeal, this lawsuit, is not about the right to sue. It's about eradicating those two requirements of receiving care by an eligible caregiver, not Mr. Piotrowski, and paying for care. In terms of waiver, waiver is a very limited doctrine. Right? There's two components in insurance matters. One is an intentional relinquishment, which the appellants are not advocating. And the second, and I want to quote from the Waller case. Right? The second requirement under Waller v. Truck Insurance Exchange is that the insurer's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that the right has been relinquished. So, in effect, the waiver act has to induce a right in the Petoskey. The Petoskey's have to believe that the insurance company no longer wanted to ask for reimbursement, for care to be provided. Counsel, Lincoln now provides the benefits, right? Is that correct? I'm sorry? Lincoln now provides the benefits? Yes. The claim has been approved. And just for clarity. So, what changed? Well, the plaintiffs, they submitted additional information medically. They also submitted information that they received care, not just after the judgment. Before the judgment. They hired an eligible caregiver before? Correct. And that information was not in front of Judge Orrick. Yeah, none of this is in our record, right? None of it's in the record. This was not briefed by either party. It's outside the record. The plaintiffs believe that whether they had the opportunity to submit another claim is irrelevant. I don't think it's irrelevant. I think it goes right to the point of why this lawsuit is continuing. But Judge Orrick was correct. He made the decision that he had to make based on the confines of the pleadings. The plaintiffs always had the opportunity to plead the way they wanted to plead. We can go back in time. They could have pleaded a different way. They could have asked for leave to amend. They had the information that they had. But right now we're at the point in the juncture where they didn't ask for leave to amend to try to perfect their claim. They wanted to seek benefits without obtaining care by an eligible caregiver and to pay for the services. So basically, in the first instance, they didn't do that. Now they have. We've provided to them. So we're really talking about this gap period. Is that right? There's no gap period. Well, what I mean is. If you lose. Yeah. They didn't get paid the first time. That's what this suit's about, right? They want to get paid for his services. The insurance company says that's not enough. But in that setting, they didn't qualify. Now Lincoln's providing it, presumably because she's medically eligible and they have provided the information about the caregiver. Is that right? I wouldn't term it exactly as such because the plaintiff had multiple opportunities to plead. The judge let them re-plead and re-plead. And so now we're at the stage where the pleadings are closed, judgment is entered. The plaintiff submitted a new claim after judgment was entered. And so, for example, there was previously an anticipatory breach of contract claim. And part of the defense of that was Lincoln said there is no repudiation. You could always submit a new claim. You could always submit new information. You could always submit reimbursable expenses. And yet, the plaintiffs here now, they understand that because there's no anticipatory breach of contract claim. And I would submit that at this point, at this juncture, Judge Orrick's decision, the judgment should be affirmed because the plaintiffs had the opportunity to plead how they did a year ago. So, your opponent suggests that the insurance company has what I think he said was a quasi-fiduciary obligation to, I'm not sure to what, with respect to these policyholders because of their age and infirmity. Do you know of any case law that would substantiate that? No, there's no quasi-fiduciary duty. There's no duty to inform. And notice, I would submit that notice is actually a red herring, this lawsuit. And this is what comes back to waiver. Waiver can't just be argued in a vacuum. Fervor, impassion, they don't constitute waiver. Waiver is very limited. And we have to look at what exactly was waived. The plaintiffs are now arguing that Lincoln waived the right to have an eligible caregiver perform the services. They're saying that Lincoln waived the right to have the Petoskey's pay for services. But neither of that is true. The Petoskey's knew all along, after each letter was sent, they knew that they had to get care from an eligible caregiver, and they knew that they had to pay for services repeatedly. This is on pages, excerpts of records 86, 88, 90. These are all affirmations by the plaintiffs that they knew, they knew that they needed to submit reimbursement, that this was a reimbursement policy. So on that very basic ground alone, there's no waiver. Mr. Cantor suggested that under California law, the waiver's a little different. It's what a reasonable policyholder would think was happening based on the information given to him or her from the insurance companies. Is that a correct interpretation of California waiver law in the insurance context? Yes. That would be under the implied waiver theory. But my ‑‑I would ‑‑ Was that argued below? Implied waiver? Yes, because there's no intentional relinquishment. They never argued intentional relinquishment. But, again, implied waiver and the inducement factor has to go to what exactly they thought was being waived. And the Petoskey's never thought that care and payment for services was being waived. And just to hit back on that point that somehow the Petoskey's should have ‑‑ were in a lurch because they didn't know who was the approved caregiver, the fact remains that it was a stepped approach. And Judge O'Rourke understood that. The Petoskey's asked for an eligibility decision before they even moved on to the next step. This is not a situation, this is not an estoppel situation where the plaintiffs are now claiming, I was confused, I didn't know who was going to be an approved caregiver. Right. There's different methods and there's different, I guess, concepts to how this would have been pled. This is not pled the way it was. Can you explain to me how the process then is supposed to work under this policy? Do you ‑‑ the claimant would submit a medical eligibility, a request for that determination, and then the insurance company needs to approve that, in fact, Mrs. P needed in‑home care. So there's that step one. And then step two would be the customer, the policyholder would go out and find a caregiver and bring them in and then submit a claim. Step two. And then step three would be to submit a claim for reimbursement. Exactly. Is that the way it works? Yes, exactly. It can work in a conjunction of ways. It could be because the Petoskey's or an insured already has a caregiver set up. They already are receiving care because they need it. And so they're submitting bills, they're submitting information. What happened at step one here? Did she get a medical approval? The decision was made based on the medical evidence. Correct. She was approved? No, she was not approved. And what was the basis for that denial? The basis of the denial is that there was a difference between mild cognitive impairment. Under the policy, you need severe cognitive impairment. And so from the medical perspective, the claim was not approved. Is the burden on the policyholder to show that? Or is that something the company has its doctors that make that decision? Correct, correct. What's correct? That it's based on its burdens always on the insured to show benefits. So they would give the company a doctor's note about, you know, impairment under the policy? Yes, they did provide information. And then if Lincoln denies that, disagrees, then what happens? Is there an appeal process? Yes, yes. Did that happen here? Yes. And ultimately she was approved for care. This was after the judgment was entered and new information was obtained about her current status and also reimbursement. But that's not. So for purposes of this lawsuit, she was never approved for a medical caregiver at all? That's correct. Okay. That's correct. But, again, we're faced with the pleadings. And we're faced with the way that the plaintiffs chose to plead the complaint. It's circumscribed by the pleadings. And Judge Org's decision was correct and should be affirmed. There was no performance. And most importantly, there are no damages. Thank you. Very well. Thank you very much. All right. Mr. Cantor, you had a little rebuttal time. Yes, Your Honor. Ms. Kojima and I are looking at this completely differently. Yes, the Patoskys could have gone out and obtained care and submitted the claim for reimbursement. But they're told from the start, we need to approve this. The Patoskys have limited funds. So they say to the insurance company, please tell us if the people we're opposing are going to be approved so we're not wasting our money. Let me back you up a little bit here. If I understand the facts correctly, Mrs. Patosky at that point was not approved medically, which was basically step one. Do you agree with that?  You do not? I do. So you think she was approved? No, no. I agree that she wasn't approved six, seven months later. I don't think it's step one. Mr. Patosky said, first of all, it was a simultaneous process. He submitted the medical, but he said to them, I don't want to pick out caregivers and have you retroactively tell me they're not approved. I understand that. But that's the second part. In other words, if she's not medically eligible, you don't even get to the second step. Of course not. Right. But we never know about the second step that the Patoskys didn't know. Because they said that she wasn't medically eligible. No, Your Honor. That happens eight months later. Okay. What he keeps saying to them is, if you tell me that they're approved, I will go out and spend the money for it. And then if she had done that and they deny the medical necessity, which would be eight months later, which we don't hear about until the motion is dismissed, we go forward with the lawsuit. Okay. Your time is up. Let me ask my colleagues whether either has additional questions. Thank you, Your Honor. Thank you both for your vigorous argument. We appreciate it. The case just argued of Patosky v. Lincoln Benefit Life is submitted.
judges: Tymkovich, SMITH, BUMATAY